[Civ. No. 4149. Third Appellate District.—February 20, 1931.]

C. S. KAST, Appellant, v. DUBUQUE FIRE AND MARINE INSURANCE COMPANY OF DUBUQUE, IOWA, et al., Respondents.

Dennett & Zion for Appellant.

Redman, Alexander & Bacon and Griffin & Boone for Respondents.

MR. JUSTICE Pro Tem. McDANIEL Delivered the Opinion of the Court.—This action was brought by the plaintiff against the defendants to recover upon a certain policy of fire insurance. Judgment was against the plaintiff and appellant and in favor of the defendants and respondents. After judgment a motion for a new trial was made by the plaintiff on the grounds: 1. That the evidence is insufficient to justify the decision of the court; 2. That the decision is against law; and, 3. On account of errors of law occurring at the trial and excepted to by the plaintiff. The motion for a new trial in due course was denied by the court, and the only issue upon this appeal is the insufficiency of the evidence to support the findings and judgment of the trial court.

According to the complaint summarized, the plaintiff on the seventeenth day of April, 1927, was the owner of a certain frame hotel building situate in the town of Chowchilla, California, which building on the fourth day of August, 1927, was destroyed by fire; the value of the building was alleged to be $12,000; at the time of the fire and destruction of said property, it was subject to the lien of a deed of trust in favor of the San Francisco Building and Loan Association, but since said date said obligation has been paid; on the seventeenth day of April, 1927, the defendants issued to plaintiff the policy of insurance against loss by fire, in the form known as "California Standard Form Fire Insurance Policy", that form being as prescribed by the law of California; the policy, by its terms, recited that the loss, if any, shall be payable to San Francisco Building and Loan Association, "mortgagee"; the said last-named building and loan association having been paid in full since said fire, the plaintiff is entitled to the proceeds of said policy, which was averred to be in full force and effect on the date of the fire; all of the proofs of loss, etc., have been duly made by the plaintiff; plaintiff prays for judgment against the defendants for the sum of $3,000, interest and costs.

█ The issue presented by the answer, which admits the issuance of the policy of insurance on the seventeenth day of April, 1927, is that the said policy of insurance had been duly canceled at the request of the plaintiff; that defendant had been informed by the plaintiff at the time he requested

cancellation of the policy that he intended to obtain other fire insurance in the same amount in another insurance company, and had done so by procuring from the American and Foreign Insurance Company insurance against loss by fire for the period of one year, in the sum of $3,000, covering the said property referred to in the complaint, which said last-named policy was in full force and effect at the time of said fire, and has since been paid by said American and Foreign Insurance Company to said plaintiff, by payment of the sum of $2,900, in satisfaction of all claims against it, arising out of said loss. Defendants deny that on August 4, 1927, the policy sued upon was in force and effect, but aver, as before stated, it had been canceled.

We have examined with care the evidence, and are satisfied the judgment of the court below must be upheld, for the reason that, by a preponderance thereof and without contradiction other than the contradictions found in the testimony of the plaintiff himself, it supports the judgment.

The facts, summarized chronologically as nearly as may be, are as follows:

For the year preceding April 17, 1927, the property was covered by a policy of insurance for $3,000, issued by the respondent. It expired on said date. It had been obtained for plaintiff by the company's local agent at Modesto, one William Falger, who was the local agent of the Pacific Coast Agency, the general coast agent of the respondent companies. The plaintiff made no request of Falger for a renewal of this first policy upon its expiration, nor did Falger solicit the renewal, for the simple reason, he said, that Mr. Kast was in the hospital at San Francisco, and "I learned from parties from Modesto that his son was writing insurance." . . . The policy was renewed, however, at the request of the secretary of the San Francisco Building and Loan Association, Mr. Steinbaugh, who, by letter dated April 16, 1927, addressed to plaintiff, notified him of the renewal, giving the number of the policy, the name of the company, the amount of the insurance, $3,000, and the premium of $135 for one year. On April 28, 1927, either the appellant or his son (who attended, as agent, to the business of his father in the latter's absence), wrote and mailed a letter to the loan association of San Francisco, concerning said policy. A copy of this letter, dated April

28, 1927, is not in evidence. Its contents, however, are indicated by the testimony of Steinbaugh, when considered with the statements in his letter of reply to Kast, which letter he wrote on May 2, 1927. It appears from that reply and from Steinbaugh's testimony that appellant was figuring on other insurance, and on handling the insurance matter himself, rather than to have the association do so, and did not wish to keep in force the policy now in question. Steinbaugh's letter to appellant follows:

"Your valued favor of the 28th ulto., in regard to the fire insurance policy on the Chowchilla Hotel is at hand and contents appreciated. Regret that you are late in getting a new policy, as the old policy expired on April 17th. Same was renewed in the Reserve Underwriters for $3,000.00, premium $135.00 for one year, policy. number 57,632, Pacific Coast Agency Company, Ltd., 60-Sansome Street, San Francisco, California. There might have been a serious loss, if we had not kept the insurance in force. Any arrangement you may make with the Pacific Coast Agency, provided we are protected, is all right with us. Regretting that you did not take this up 30 days ago, and hoping it will be adjusted to our mutual protection and satisfaction. With kind regards, we remain,

"Yours respectfully,
"SAN FRANCISCO BUILDING & LOAN ASSN.,
"D. A. STEINBAUGH,
"Secretary."

Steinbaugh, referring to the April 28, 1927, letter from appellant, testified as follows: "Q. Now will you state again what your recollection is as to the contents of that letter that you received from Mr. Kast? A. Just what this implies, that he was figuring on other insurance or handling the matter rather than us and he wanted to handle it rather than us—here is the idea—this will clear up the situation—he had been practically acting as agent for himself in that and other companies and he got the original Reserve policy and I renewed it—now the question was whether he was going to arrange to pay it down there or arrange for the commission, or whether we were going to get it, or whether he would pay it here—that seemed to be the line I was working on."

On the twenty-ninth day of April the appellant had made application through one Griffin, an insurance agent at Sacramento, from whom appellant's son, C. H. Kast, expected an appointment as an Insurance agent, for a $3,000 policy in the American and Foreign Company, covering the same Chowchilla property. This policy was issued by the American and Foreign Company and duly sent to the San Francisco Building and Loan Association, the same being the policy to take the place of respondents' policy as security for Kast's indebtedness to the association.

On or about July 10th the plaintiff went to see Falger, the local agent of the respondent companies at Modesto, with whom he had a conversation concerning the policy here in question. The appellant states: "I asked Mr. Falger if he had renewed the policy. He said 'No,' and I told him that Mr. Steinbaugh wrote to me that he took out a policy for $3,000.00, and that my boy was in the insurance business now, and if he had. a policy, I would want him to cancel it if he had rewritten it, and if he had not written it, not to write it, as my boy is in the insurance business, and I would give the boy the commission, and that would be all the insurance I would want to carry on the building."

The witness Falger, with reference to the same occasion, said that the plaintiff said to him: "Mr. Falger, that policy that has been issued, I have ordered it canceled, because my son is now writing insurance and is going to have a policy written and I want him to have the commission."

The court below must have interpreted this conversation as referring to appellant Kast's letter to the San Francisco Building and Loan Association of April 28th. On or about July 15th, after having received from the Pacific Coast Agency Company, a report of insurance business and outstanding premiums, Falger wrote the respondent company, informing it that "in speaking to Kast he said that this policy had been returned for cancellation, for the reason that one of his sons was now writing life and fire and he had rewritten same".

Falger also directed in the same letter that the premium charged against him for collection on policy number 57,632 of C. S. Kast, premium $135.should not be charged to the Falger account. Immediately after the receipt of that communication the respondent company, through its agent at

San Francisco, Mr. George P. Duncan, who had delivered the policy to the San Francisco Building and Loan Association theretofore, made a notation upon the Falger letter: "Not received and should have E. P.," meaning that the policy was not returned to the respondent company, and that it should receive earned premium, i. e., from April 17, 1927, to July 15th or 16th.

Mr. Duncan, when a witness, stated that upon receipt of the information from Falger, he called up Mr. Steinbaugh on the telephone and read the letter of Falger telling him the policy was canceled as of the date of July 15, 1927. He also informed Steinbaugh that the company was entitled to the earned premium from and after April 17th to date of cancellation. There were several conversations to the same effect with Steinbaugh, who interposed no objection as to the payment of the earned premium, but said, "that it would receive attention right away". Steinbaugh failed to pay the premium or to return the canceled policy. Steinbaugh at all times represented both appellant and the San Francisco Building and Loan Association in the insurance transaction. Steinbaugh also informed Duncan, representing the respondent at the time of the conversation, that the association had received another insurance policy to take the place of the canceled policy.

It next appears that on August 9th, five days after the fire, Steinbaugh, acting for appellant C. S. Kast, mailed to respondent companies a check for $135, the total year's premium. This check was never cashed by the respondent companies, but retained in their possession, after notifying the maker that it was too large in amount, as the company had only coming to it the earned premium from April 17th to the date of cancellation on July 15, 1927. It was retained, Duncan testified, only as evidence of the attempt to pay the premium after the property had been burned.

In all of the transactions relating to the fire insurance company it appears that Steinbaugh, secretary of the San Francisco Building and Loan Association, acted for its protection as well as for the appellant. He procured the policy and must be considered appellant's agent in the transaction; he had been informed of appellant's intention to substitute a policy of, appellant's own procurement in place of the

policy sued upon and had kept appellant duly notified in all matters concerning the business.

The trial court evidently construed all of the foregoing facts, fairly weighed and interpreted, to mean that the policy, at appellant's request, was canceled on July 15, 1927, and as supporting by adequate preponderance the material averments of the complaint.

While it is true that no explicit and direct statement appears in the evidence to have been made by appellant requesting the policy in question to be canceled, the fair inference from all that was said and done by himself and his agents is that he actually did request the cancellation.

The findings of the trial court upon conflicting evidence are conclusive. It is unnecessary to cite any authorities in addition to those used by respondent on this appeal. (*Migala* v. *Dakin,* 99 Cal. App. 60, 61 [277 Pac. 898]; *Mercantile Investment Co.* v. *How,* 99 Cal. App. 182, 186 [278 Pac. 243]; *Dellarowe* v. *Kirchner,* 99 Cal. App. 599, 601 [279 Pac. 210].)

It is an admitted fact, alleged in the complaint and not denied, that the standard form of insurance policy was the form of the policy sued upon, and under the law of California, that standard form contains the provision that the policy "shall be canceled at any time at the request of the insured". (1 Deering's Gen. Laws, 1923, p. 1354, Act 3735.) The facts, also, preponderate to support the court's finding that there was cancellation by consent of the parties.

We quote from *Westchester Fire Ins. Co.* v. *McMinn,* (Tex. Civ. App.) 188 S. W. 25, 26, as follows: "A policy of insurance may be canceled at any time before loss, by agreement between the parties. And there may be cancellation by consent of the parties, independent of the terms of the policy. And in such case an immediate payment of the unearned premium may not be required in order to make valid the agreed cancellation. As to whether there was an agreement here was a question of fact."

In *Stevenson* v. *Sun Ins. Office,* 17 Cal. App. 288 [119 Pac. 529, 531], the following quotation is applicable and determinative of the instant appeal:

"There is no merit in the contention discussed and urged by plaintiff that the contract of insurance in the case at bar

cannot be considered as canceled merely because the policy in controversy was not formally and physically surrendered into the possession of the defendant prior to the fire. A contract of insurance must be governed and interpreted by the same rules which ordinarily apply to other contracts, and it will be enforced only according to the manifest intention of the parties. It is a self-evident proposition that a contract of insurance may be as readily rescinded, as it was made, by the mutual agreement of the parties or their authorized representatives; and while the surrender of a policy of insurance by the insured and its acceptance by the insurer is usually *prima facie* evidence of cancellation, yet a formal physical surrender is not absolutely necessary to a rescission and cancellation of the contract. The formal surrender and acceptance of the policy is at best a piece of evidence tending to show a cancellation, and if the fact of rescission is established (as we think it was in this case) by the mutual agreement of the parties, the rescission is as complete and effectual as if the policy had been actually endorsed 'canceled' and surrendered into the possession of the defendant.''

The judgment is affirmed.